**NOT FOR PUBLICATION**

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| READY & MOTIVATED MINDS, LLC, d/b/a READYMINDS, | Civil Action No.: 10-1654 (JLL) |
| Plaintiff, | |
| v. | |
| CERIDIAN CORP., | **OPINION** |
| Defendant. | |

**LINARES**, District Judge.

This matter comes before the Court on a motion to dismiss Plaintiff's Complaint filed by Defendant pursuant to Federal Rule of Civil Procedure 12(b)(6). The Court has considered the submissions made in support of and in opposition to the instant motion and decides the matter without oral argument. Fed. R. Civ. P. 78. Based on the reasons that follow, Defendant's motion to dismiss is granted in part and denied in part. Plaintiff's claims for breach of contract and breach of the implied covenant of good faith and fair dealing are dismissed without prejudice. Plaintiff has thirty (30) days in which to amend such claims to cure the pleading deficiencies addressed herein. Plaintiff's equitable claims may proceed at this time.

## BACKGROUND

Plaintiff's Complaint alleges, generally, that in or about August 2004, Plaintiff ReadyMinds and Defendant Ceridian ("the parties") began discussing a potential collaboration in connection with

1

Ceridian's response to an anticipated Request for Proposal ("RFP") by the United States Department of Defense for its Military OneSource program contract. (Compl., ¶ 21). In furtherance of this objective, the parties entered into several agreements including, but not limited to, a Non-Disclosure Agreement ("NDA"), a Letter of Intent, a Teaming Agreement, a Master Services Agreement ("the Subcontract") and a Statement of Work (SOW) agreement. (Id., ¶¶ 27, 38, 46).

First, the parties executed a NDA, effective August 19, 2004, which provided that the parties would share certain information in connection with their collaboration. Pursuant to the NDA, such information was deemed "private, confidential and/or proprietary in nature," and included "information relating to ReadyMinds' products and services, Ceridian's service offerings, and the possibility of each party integrating services with the other's then existing programs." (Id., ¶¶ 28, 29). After exchanging such information, in September 2004, the parties prepared a capability statement for submission to the Department of Defense. (Id., ¶ 32). The capability statement which was ultimately submitted to the Department of Defense contained ReadyMinds' proprietary information. (Id., ¶ 35).

Next, the parties executed a Letter of Intent ("LOI") in November 2004. The LOI confirmed "the agreement in principle" between the parties "regarding the proposal of Ceridian to include the employment support services and distance counseling for military spouses and other related produces and services of ReadyMinds in a proposal to be submitted by Ceridian to the Department of Defense." (Id., ¶ 38). The LOI also stated that "Ceridian's proposal [would] be made in response to a Request for Proposal ("RFP") that is expected to be issued by the Department of Defense in November of 2004." (Id., ¶ 39). Paragraph 6 of the LOI went on to state that any response by ReadyMinds or Ceridian to the foregoing RFP would be made in conjunction with the other party;

2

however, "in the event that Ceridian is not awarded the contract as a result of its response to the RFP, this Paragraph 6 shall be null and void." (Id., ¶ 41).

In July 2005, the parties entered into a Teaming Agreement. (Id., ¶ 46). Paragraph 11.H of the Teaming Agreement provides that, "[n]otwithstanding anything to the contrary in this Agreement, (I) any response of [ReadyMinds] to the RFP will be made in conjunction with Ceridian, (ii) [ReadyMinds] will not respond to the RFP independently of Ceridian or with any third party, (iii) any response to the RFP by Ceridian that includes services substantially similar to those offered by [ReadyMinds] will be made in conjunction with [ReadyMinds]." (Id., ¶ 51). The Teaming Agreement defines the RFP as "the Request for Proposal issued by [the United States Department of Defense] with respect to Ceridian's employee assistance program services for the military." (Id., ¶ 48). The parties simultaneously entered into a Subcontract Agreement and a Statement of Work ("SOW") Agreement which detailed the specific services to be provided by ReadyMinds if/when Ceridian received the Military OneSource program contract as contemplated by the Teaming Agreement. (Id., ¶ 50).

According to the Complaint, Ceridian sent ReadyMinds a letter on July 9, 2007 purporting to terminate the Teaming Agreement and Subcontract on the basis that it had received an Amendment of Solicitation/Modification of Contract from the Department of Defense cancelling the RFP which formed the basis of Ceridian's relationship with ReadyMinds. (Id., ¶ 73). Plaintiff claims that such an attempt to terminate was wrongful inasmuch as the letter from the Department of Defense did not cancel the procurement; rather, "[a]ll that changed was the procuring agency." (Id., ¶¶ 76, 77). Thus, Plaintiff claims that the Amendment of Solicitation/Modification of Contract from the Department of Defense did nothing more than transfer the solicitation for the Military OneSource

3

program contract from the Department of Defense to the Acquisition Services Directorate within the Interior Department's National Business Center  (hereinafter "ASD"). (Id., ¶¶ 77-82).  The Complaint goes on to allege that Ceridian responded – on its own – to the RFP issued by the ASD and was ultimately awarded the Military OneSource contract in December 2009. (Id., ¶¶ 83, 100).

In light of the foregoing, Plaintiff asserts the following claims for relief: (1) breach of contract, (2) breach of the covenant of good faith and fair dealing, (3) quantum meruit, (4) unjust enrichment, (5) promissory estoppel, and (6) estoppel.  Defendant has filed a motion to dismiss each of Plaintiff's claims.[1]

## LEGAL STANDARD

For a complaint to survive dismissal, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). In evaluating the sufficiency of a complaint, a court must accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party. See Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008). Additionally, in evaluating a plaintiff's claims, generally "a court looks only to the facts alleged in the complaint and its attachments without reference to other parts of the record." Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994).

---

[1] This Court's jurisdiction is premised on 28 U.S.C. § 1332.

## ANALYSIS

**I.      Breach of Contract**

According to the Complaint, Ceridian's actions in responding to the RFP issued by the ASD and in performing services under the Military OneSource program contract without Plaintiff's involvement violated the terms of the parties' Teaming Agreement and Subcontract.  (Compl., ¶ 100).  "In order to survive a motion to dismiss for failure to state a breach of contract claim, the plaintiff must demonstrate: first, the existence of the contract, whether express or implied; second, the breach of an obligation imposed by that contract; and third, the resultant damage to the plaintiff." VLIW Tech., LLC v. Hewlett-Packard Co., 840 A.2d 606, 612 (Del.  2003).[2]

Ceridian seeks dismissal of Plaintiff's breach of contract claim on the basis that: (1) the parties' agreement to respond jointly to an RFP relating to the Military OneSource Program applied only to an RFP issued by the Department of Defense (as set forth in the Teaming Agreement the Subcontract), (2) the Department of Defense cancelled its own RFP for the Military OneSource Program, (3) the parties' contracts were terminated upon the Department of Defense's cancellation of the RFP that it issued, (4) the ultimate "issuer" of the only RFP that Ceridian responded to relating to the Military OneSource Program was the ASD, and (5) Ceridian was not bound to respond to the RFP issued by the ASD in conjunction with the Plaintiff.  Therefore, according to Defendant, the Complaint fails to state a claim for breach of contract.

As a preliminary matter, the Court notes that Plaintiff's breach of contract claim is based upon Ceridian's alleged breach of various agreements between the parties including, but not limited to, the Teaming Agreement, the Subcontract and several Statement of Work agreements.  The Court

_____

[2] The parties agree that Delaware law governs Plaintiff's claims.

will first assess whether Plaintiff has properly stated a claim for breach of contract with respect to the Teaming Agreement.

The parties have each attached various documents for the Court's consideration.  The Court declines to consider such documents for purposes of this motion.  See, e.g., Pryor v. Nat'l Collegiate Athletic Ass'n, 288 F.3d 548, 560 (3d Cir. 2002).  Suffice it to say that the Complaint alleges the following key factors with respect to the Teaming Agreement: (a) the Teaming Agreement entered into by the parties relates solely to an RFP issued by the Department of Defense,[3] and (b) the RFP which Plaintiff claims Ceridian improperly responded to, in breach of the Teaming Agreement, was issued by the ASD – not the Department of Defense.[4]

Plaintiff attempts to reconcile this discrepancy by theorizing that "the ASD is the contracting agent for the [Department of Defense]."  (Pl. Opp'n Br. at 22).  This specific allegation is notably absent from Plaintiff's Complaint.  Legal theories set forth in Plaintiff's opposition brief are helpful only to the extent that they find support in the allegations contained in its Complaint.  See, e.g., Com. of Pa. ex rel. Zimmerman v. PepsiCo, Inc., 836 F.2d 173, 181 (3d Cir. 1988) ("[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.").   Not only is the agency theory missing from the Complaint, but it appears that a different theory is presented therein.  See Compl., ¶¶ 76-77 ("Ceridian's attempt to terminate both the Teaming Agreement and the Subcontract was wrongful.  The procurement was never terminated.  All that changed was the procuring agency.").  To the extent that Plaintiff wishes to rely on the theory that the ASD served as the contracting agent for the Department of Defense, Plaintiff's Complaint must be amended to

---

[3] Compl., ¶ 48.

[4] Compl., ¶¶ 82-83.

reflect factual allegations in support of same.  Absent such an amendment, the Court agrees with

Ceridian that the Complaint fails to state a claim for breach of contract inasmuch as the Complaint

alleges no obligation by Ceridian with respect to an RFP issued by the ASD. See VLIW Tech., LLC

v. Hewlett-Packard Co., 840 A.2d at 612 (noting that to state a claim for breach of contract, plaintiff

must demonstrate, inter alia, the existence of a contract and the breach of an obligation imposed by

that contract).

Plaintiff's breach of contract claim as it relates to the Subcontract and/or any SOW

agreements between the parties is equally deficient.  As a general matter, Plaintiff's Complaint must

be amended to add additional factual allegations in support of the claim that Defendant's actions

breached each of the foregoing agreements.  For instance, the Complaint does not specify the

particular obligation(s) imposed by each of the respective agreements which Ceridian is alleged to

have violated.  Absent such factual details, Plaintiff's breach of contract claim (to the extent it is

based on a breach of the Subcontract and/or any other related agreements) fails to comply with

Federal Rule of Civil Procedure 8.[5]  Moreover, to the extent Plaintiff seeks to utilize the agency

theory in support of this aspect of its breach of contract claim, Plaintiff's Complaint must also be

amended to include factual allegations in support of the theory that the ASD served as the

contracting agent for the Department of Defense as it relates to the terms of the Subcontract and/or

---

[5] Rule 8 requires that the Complaint set forth (1) "a short and plain statement of the grounds upon which the court's jurisdiction depends," and (2) "a short and plain statement of the claim showing that the pleader is entitled to relief."  Recently, in Ashcroft v. Iqbal, the Supreme Court clarified the pleading standards.  See  129 S. Ct. 1937 (U.S. 2009).  The Court held that for a complaint to survive dismissal, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Id. at 1949.  But the Court also made clear that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions[;] [t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Id. at 1949.

any SOW agreements between the parties.

In light of the foregoing, Defendant's motion to dismiss Plaintiff's breach of contract claim is granted.  Plaintiff's breach of contract claim is dismissed without prejudice.  To the extent that such a claim can be remedied by an amendment, the Court will afford Plaintiff thirty (30) days from the entry of the attached Order to file an Amended Complaint which cures the pleading deficiencies addressed herein.  Plaintiff's failure to file such an Amended Complaint by such date will result in the dismissal of Plaintiff's breach of contract claim with prejudice.

## II.    Breach of the Implied Covenant of Good Faith and Fair Dealing

Plaintiff's Complaint alleges that "[i]mplied in the Teaming Agreement, the Subcontract, and the [Statement of Works] is the obligation of Ceridian to subcontract with ReadyMinds for the provision by ReadyMinds of the services described in the Subcontract and SOWs in performance by Ceridian of any contract awarded to Ceridian by the [Department of Defense] regarding the subject matter of the RFP, that is, the Military OneSource program." (Compl., ¶ 104). In addition, the Complaint alleges that "Ceridian's position that it is relieved from its obligations under the Teaming Agreement, the Subcontract and the [Statement of Works] because the Subcontract was based on the RFP that was canceled pursuant to the [Amendment of Solicitation/Modification of Contract from the Department of Defense] is disingenuous, evidences bad faith and breaches the obligation imposed on Ceridian to deal in good faith and deal fairly with ReadyMinds." (Compl., ¶ 107).

The Court of Chancery of Delaware has explained that:

The implied covenant of good faith and fair dealing inheres in every

8

contract and "requires 'a party in a contractual relationship to refrain from arbitrary or unreasonable conduct which has the effect of preventing the other party to the contract from receiving the fruits' of the bargain." The implied covenant cannot be invoked to override the express terms of the contract. Moreover, rather than constituting a free floating duty imposed on a contracting party, the implied covenant can only be used conservatively "to ensure the parties' 'reasonable expectations' are fulfilled." Thus, to state a claim for breach of the implied covenant, [plaintiff] "must allege a specific implied contractual obligation, a breach of that obligation by the defendant, and resulting damage to the plaintiff." General allegations of bad faith conduct are not sufficient. Rather, the plaintiff must allege a specific implied contractual obligation and allege how the violation of that obligation denied the plaintiff the fruits of the contract. Consistent with its narrow purpose, the implied covenant is only rarely invoked successfully.

Kuroda v. SPJS Holdings, L.L.C., 971 A.2d 872, 888 (Del. Ch. 2009).

Ceridian moves to dismiss this claim on the basis that "the implied covenant of good faith and fair dealing cannot be used to negate the express cancellation provisions of the Teaming Agreement and Subcontract [or] to override the parties' limitation of their obligations to [an RFP] issued by the Department of Defense." (Def. Br. at 20). "The purpose of the implied covenant is to ensure that a party to a contract is not prevented 'from receiving the fruits of the bargain.' " Id. Thus, to properly plead a claim for breach of the implied covenant of good faith and fair dealing, Plaintiff must allege some injury to its contractual interest as a result of the breach of the implied obligation. Id. Plaintiff's Complaint, as currently drafted, fails to plead such an injury.

To the contrary, Plaintiff's own arguments confirm that the theory underlying this claim turns on contract interpretation, not on the assessment of a covenant which was implicit to the Teaming Agreement. See Pl. Opp'n Br. at 30 ("There can be no doubt that the final form of the RFP issued through the ASD and the subsequent contract awarded to Ceridian in December 2009 is the RFP and

9

Prime Contract referenced in the parties' [Teaming] Agreement.").  Moreover, Plaintiff's alleged injuries resulting from Ceridian's failure to (a) respond to the RFP in conjunction with the Plaintiff, (b) to utilize Plaintiff's services in performing the Military OneSource program contract, and (c) to pay Plaintiff for such services are, according to the Complaint, governed by express provisions of the Teaming Agreement and the SOW agreements and therefore cannot form the basis of a claim for breach of the implied covenant of good faith and fair dealing.  Finally, to the extent Plaintiff claims that Ceridian's interpretation of the Teaming Agreement (and its obligation under same) is "disingenuous" and/or "evidences bad faith," such allegations – alone – are insufficient to state a claim for breach of the implied covenant of good faith and fair dealing under Delaware law.  See, e.g., Kuroda, 971 A.2d at 888 (noting that "general allegations of bad faith conduct are not sufficient" to state a claim for breach of the implied covenant of good faith and fair dealing); N.K.S. Distributors, Inc. v. Tigani,  2010 WL 2178520, at *7 (Del. Ch. May 28, 2010) ("Indeed, the principles underlying freedom to contract suggest that '[a] party does not act in bad faith [simply] by relying on contract provisions for which the party bargained,' even though a particular result under a contract may seem unduly harsh."); Amirsaleh v. Bd. of Trade of City of New York, Inc., 2009 WL 3756700, at *5 (Del. Ch. Nov. 9, 2009) ("To prove bad faith a plaintiff must demonstrate that the defendant's conduct was motivated by a culpable mental state.  In other words, the defendant's conduct must be driven by an improper purpose.").

Notwithstanding the foregoing, Plaintiff's Complaint does allege that, prior to sending the July 9, 2007 letter terminating the Teaming Agreement based upon the alleged cancellation of the RFP which formed the basis of the parties' relationship, Ceridian had attempted to terminate the Teaming Agreement and Subcontract based on a different reason. (Compl., ¶ 69).  In particular, the

Complaint alleges that "[i]n early June 2007, ReadyMinds received by email an unsigned letter from Robert McKinley on behalf of Jim Corcoran of Ceridian purporting to terminate the Teaming Agreement and Subcontract because 'the Department of Defense does not wish to receive the ReadyMinds services." (Compl., ¶ 70). According to the Complaint, such a representation was false. The Complaint goes on to allege that "[a]fter being pressed by ReadyMinds, Ceridian then changed the reason for its purported termination of the Teaming Agreement. The new purported reason was that Ceridian had received an Amendment of Solicitation/Modification of Contract" cancelling the RFP which formed the basis of the parties' relationship. (Compl., ¶¶ 71-73). In light of such allegations, which could be suggestive of bad faith, the Court's dismissal of Plaintiff's claim for breach of the implied covenant of good faith and fair dealing is without prejudice. Plaintiff has thirty (30) days in which to amend such claim to cure the pleading deficiencies addressed herein. See generally Kelly v. Blum, 2010 WL 629850, at *13 (Del.Ch. Feb. 24, 2010) ("Because general allegations of bad faith do not satisfy these elements, to state a cognizable claim a 'plaintiff must allege a specific implied contractual obligation and allege how the violation of that obligation denied the plaintiff the fruits of the contract.' ") (emphasis in original).

### III.    Equitable Claims

The crux of Plaintiff's Complaint is that it is owed money pursuant to the terms of the Teaming Agreement, the Subcontract and the SOW agreements and that Ceridian has failed to make such payments in violation of their contractual obligations. In addition, however, Plaintiff asserts various equitable claims – quantum meruit, unjust enrichment, promissory estoppel and estoppel. (Compl., ¶¶ 109-37).

11

Count Three of Plaintiff's Complaint sets forth a claim of <u>quantum</u> <u>meruit</u>.  In particular, Plaintiff's Complaint alleges that "[t]hrough the retention of ReadyMinds' expertise, services and Proprietary Information, Ceridian has been unjustly enriched.  It would be unconscionable to allow Ceridian to retain the benefit of ReadyMinds' expertise, services and Proprietary Information without Ceridian paying for the value thereof." (Compl., ¶ 117).  Count Four of Plaintiff's Complaint sets forth a claim of unjust enrichment. In particular, Plaintiff's Complaint alleges that "Ceridian has been unjustly enriched by receiving and retaining the benefit of ReadyMinds' expertise, services, and Proprietary Information.  ReadyMinds reasonably expected remuneration in return for the use by Ceridian of ReadyMinds' expertise, services and Proprietary Information." (Compl., ¶ 120-121). Count Five of Plaintiff's Complaint sets forth a claim of promissory estoppel.  In particular, Plaintiff's Complaint alleges that "[b]y Ceridian's statements and actions, and the parties' course of conduct, Ceridian promised that it would enter into a subcontract with ReadyMinds to service the [Department of Defense's] Military OneSource program upon the award of the [Department of Defense] contract to Ceridian. ReadyMinds, relying on Ceridian's promise, expended considerable time and resources in ensuring that Ceridian had the capability to perform the services required by the [Department of Defense] in connection with its Military OneSource program, to ReadyMinds' detriment." (Compl., ¶¶ 127-28). Count Six of Plaintiff's Complaint sets forth a claim for estoppel. In particular, Plaintiff's Complaint alleges that "Ceridian and ReadyMinds had a contractual relationship under the terms of the Teaming Agreement, the Subcontract and the SOWs. ReadyMinds, in reliance on Ceridian's agreement to enter into a subcontract with ReadyMinds to service the Department of Defense's Military OneSource program upon the award of the Department of Defense contract to Ceridian, expended considerable time and resources in ensuring that Ceridian

had the capability to perform the services required by the [Department of Defense] in connection with its Military OneSource program to ReadyMinds' detriment." (Compl., ¶ 133-34).  Defendant does not challenge the sufficiency of the facts pled in support of such equitable claims; rather, Ceridian claims, generally, that such equitable claims are not available where an express contract governs the relationship between the parties. (Def. Br. at 20).  The Court will, therefore, limit its analysis  accordingly.

As a preliminary matter, Defendant fails to specify which particular contract it believes governs the allegations raised in support of Plaintiff's equitable claims.  Second, Plaintiff is permitted to plead alternative claims for recovery. See, e.g., WalMart Stores, Inc. v. AIG Life Ins. Co., 872 A.2d 611, 619 (Del. Ch.2005) ("In some circumstances, alternative pleading allows a party to seek recovery under theories of contract or quasi-contract"), aff'd in part and rev'd on other grounds, 901 A.2d 106 (Del. 2006).    Finally, although Defendant is correct in noting that, generally, an equitable claim cannot lie where a contract governs the relationship between parties that gives rise to the equitable claim,[6] accepting all allegations contained in the Complaint as true for purposes of the instant motion, the Court finds that it is not entirely clear from the face of the Complaint that a particular contract governs the dispute giving rise to Plaintiff's equitable claims.   As described in the Complaint, the Teaming Agreement and Subcontract, executed in July 2005, pertained to a collaboration between the parties in responding to an RFP concerning the Military OneSource program.  But the parties had exchanged certain proprietary information a year earlier in preparation for their joint submission of a capability statement to the Department of Defense. (Compl., ¶¶ 28-35).

_____

[6] See, e.g., Kuroda, 971 A.2d at 891; Albert v. Alex. Brown Mgmt., Servs., Inc., 2005 WL 2130607, at *8 (Del. Ch. Aug. 26, 2005).

This exchange of information, Ceridian's alleged use of such information and representations made by Ceridian during that time period form the basis of Plaintiff's equitable claims.  Although the exchange of such information was made pursuant to a NDA, it would be premature at this time to determine whether Ceridian's alleged use of Plaintiff's proprietary information falls within the scope of the NDA (or any of the other agreements at issue in this case).  Defendant's motion to dismiss such claims on such a basis is, therefore, denied.


### CONCLUSION

Based on the reasons set forth above, Defendant's motion to dismiss is granted in part and denied in part.  Plaintiff's breach of contract and breach of implied covenant of good faith and fair dealing claims are dismissed <u>without</u> prejudice.  Plaintiff has thirty (30) days in which to file an Amended Complaint which cures the pleading deficiencies in such claims.  Failure to do so will result dismissal of such claims <u>with</u> prejudice.

An appropriate Order accompanies this Opinion.


DATED: July 26, 2010                                   /s/ Jose L. Linares_____
                                                       United States District Judge